UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL PORTER, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> T&T FARMS, INC., an Indiana Corporation; and THOMAS HALLECK, JR., an individual. <br><br> Defendants. | Case No. 3:21-cv-529-JD-MGG |

## OPINION AND ORDER

In this lawsuit, Plaintiff Michael Porter alleges that Defendants T&T Farms Inc. and Thomas Halleck, president and owner of T&T Farms, are engaged in a "fraudulent scheme" that involves making false promises to commercial truck drivers about a "lease-program" employment opportunity. T&T Farms representatives, including Mr. Halleck, call commercial truck drivers to hire them for a business opportunity program. This program consists of commercial truck drivers leasing a truck and trailer from T&T Farms, which they own at the end of a four-year lease. While the drivers pay off the truck and trailer, they are simultaneously employed by T&T Farms using the trucks to drive routes and haul cargo as prescribed by T&T Farms.

Mr. Porter submits that he became a victim of this scheme after the Defendants induced him to enter into a truck lease following their false representations about the projected income and opportunities. Mr. Porter alleges that he worked long hours for little pay and was charged hidden fees, which made it impossible to continue the program long enough to own the truck and

trailer at the end. Mr. Porter sued both T&T Farms and Mr. Halleck, in this Court, on behalf of himself and others similarly situated, alleging violations of the federal Truth-in-Leasing Regulations, the Indiana Business Opportunity Transactions Act, the Indiana Wage Payment Statute, failure to pay minimum wage, constructive fraud, and breach of contract and the duty of good faith and fair dealing.[1] T&T Farms and Mr. Halleck move to dismiss the Truth-in-Leasing, Indiana Business Opportunity Transaction Act, and the breach of contract and good faith claims for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court denies the defendants' motion to dismiss the Truth-in-Leasing and Indiana Business Opportunity Transaction Act as to both defendants. The Court also denies the motion to dismiss the breach of contract and good faith claim as to T&T Farms, but grants the motion with regard to Mr. Halleck.

A.   **Factual Background**

Plaintiff Michael Porter performed work as a driver for Defendant T&T Farms from about March 2020 to February 2021. (DE 1 at 3.) Mr. Porter alleges that T&T and its president and primary owner, Defendant Thomas Halleck, are engaged in hiring commercial drivers for T&T's "lease-driver" business opportunity program (the "Driving Opportunity") whereby truck drivers lease trucks from T&T and simultaneously agree to provide driving services to T&T utilizing those trucks. (DE 1 at 1, 4.) The following is a summary of the Driving Opportunity as alleged by Mr. Porter. At this stage of the proceeding, the Court accepts all well pleaded factual allegations as true, as well as all reasonable inferences drawn from these allegations.

---

[1] At this juncture, the Court is considering Mr. Porter's claim only as no class has been certified in this case.

To recruit drivers for the Driving Opportunity, Mr. Halleck and other representatives of T&T call prospective drivers advertising a "lease program" in which drivers lease a truck and trailer from T&T, own that truck and trailer at the end of the lease, and in which the drivers drive for T&T to earn an average of $1,200 to $1,500 per week. (DE 1 at 4–5.) Mr. Halleck called Mr. Porter and told him that, if he leased a truck and trailer from T&T, he would be paid 90% of the gross moneys paid to T&T by its shipping customers. (DE 1 at 4–5.) Mr. Porter alleges that the goal of these initial communication was to make him come to T&T's facility in Indiana to purchase the Driving Opportunity and begin driving for T&T. Mr. Porter did come to Indiana and began driving under the Driving Opportunity program. (DE 1 at 5.) Having undertook the Driving Opportunity, he often worked 6–7 days per week and 11–14 hours per day. (DE 1 at 4.)

Mr. Porter alleges that these representations by Mr. Halleck, T&T, and T&T's other representatives amount to a "fraudulent scheme" designed to "defraud [him] out of their labor and money." (DE 1 at 4.) Mr. Porter alleges that he was not paid the promised 90% of the gross revenue that T&T receives from customers. (DE 1 at 6.) Further, Mr. Porter alleges that T&T charged him without his authorization, by way of deductions or set offs against his compensation, for a variety of initially undisclosed expenses including: insurance premiums for workers compensation, occupational hazard, and truck insurance; tolls; fuel and fuel tax; electronic fund fees; compensation for dispatchers; compensation for truck and trailer maintenance; and other miscellaneous expenses. (DE 1 at 6–7.) Mr. Porter also alleges that T&T charged him for these expenses in excess of the amounts T&T actually paid for them. *Id.* Finally, Mr. Porter alleges that T&T concealed drivers that, under the Driving Opportunity, he would make well under $1,200 to $1,500 weekly, that there is a high turnover rate for T&T drivers, that drivers rarely last long enough to own the trucks, and that T&T does not issue written documents

3

to memorialize any of its promises pertinent to driver compensation and other terms of the Driving Opportunity. (DE 1 at 5.) Mr. Porter alleges that Mr. Halleck made no such disclosures and issued no such written documents on the call between the two of them or at any other point.

Mr. Porter sued T&T and Mr. Halleck in this court, alleging six different claims: (1) Violations of the Truth-In-Leading Regulations; (2) Violations of the Indiana Business Opportunity Transactions Law; (3) Violations of the Indiana Wage Payment Statute; (4) Failure to pay minimum wage; (5) Constructive fraud; and (6) Breach of contract and the covenant of good faith. Defendants T&T and Mr. Halleck moved to dismiss counts I, II, and VI for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6). (DE 11.)

**B.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for failure to state a claim upon which relief can be granted. In considering dismissal under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the Plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the Plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true." *Twombly,* 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

**C.      Discussion**

T&T and Mr. Halleck move to dismiss the Truth-in-Leasing, the Indiana Business Opportunity Act, and the breach of contract and covenant of good faith claims for failure to state a claim.[2]

***1.      Count I—Truth-in-Leasing***

The federal Truth-in-Leasing regulatory scheme ("TIL") is designed to "prevent large carriers from taking advantage of individual owner-operators due to the individual's weak bargaining position. *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 367 F.3d 1108, 1110 (9th Cir. 2004). An "authorized carrier may perform authorized transportation in equipment it does not own only under" certain conditions, 49 C.F.R. § 376.11, including requirements that the lease be in writing and contain certain basic provisions. *Id*; 49 C.F.R. § 376.12. The basis of Mr. Porter's claim is that T&T's Driving Opportunity program failed to comply with several TIL requirements, including a failure to reduce the lease to writing.

T&T's sole argument on its motion to dismiss Count I is that the TIL regulations do not apply to the Driving Opportunity because they only apply when a motor carrier is performing

---

[2] Mr. Halleck argues regarding the Truth-in-Leasing and breach of contract and covenant of good faith claims that even if the claims survive against T&T, they should be dismissed as to Mr. Halleck.

5

"authorized transportation in equipment it does not own." (DE 12 at 6 (quoting *Ordosgoitti v. Werner Enters., Inc.*, 8:20-CV-421, 2021 WL 2682711, at *4 (D. Neb. June 30, 2021).) T&T asserts that the TIL regulations do not apply because T&T is just as much of an "owner" of the equipment under the Driving Opportunity as Mr. Porter. (DE 18 at 4.) T&T claims that the "dual ownership" of the equipment makes TIL regulations inapplicable. *Id.*

In order to survive a motion to dismiss, Mr. Porter must allege sufficient facts to raise an inference that (1) he was an "owner" of the truck and trailer as that term is defined in the regulations; and that (2) he "leased" that equipment to the other party. *See Shimko v. Jeff Wagner Trucking, LLC*, No. 11-CV-831-WMC, 2014 WL 7366190 at *2 (W.D. Wis. Dec. 24, 2014). TIL regulations define an "owner" as "[a] person (1) to whom title to equipment has been issued, or (2) who, without title has the right to exclusive use of equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person." 49 C.F.R. § 376.2(d). The TIL regulations' definition of "owner" permits dual ownership. *Shimko*, 2014 WL 7366190 at *3. Here, it is plausible from the face of the complaint that both Mr. Porter and T&T were "owners" of the truck and trailer. Mr. Porter possessed exclusive use of the equipment, while T&T retained title to the equipment until the end of the lease when Mr. Porter would own the truck. T&T itself asserts that "the complaint establishe[s] T&T as a dual 'owner' of the Equipment (along with [Mr.] Porter). (DE 18 at 3.)

However, T&T errs in relying on the "dual ownership" of the truck and trailer to escape liability. Dual ownership does not remove a lease from TIL regulations.

> The purpose of the regulations is to protect owner-operators from abusive practices and promote the stability and economic welfare of the independent trucker segment of the motor carrier industry. This purpose does not support distinguishing between truck drivers who own their trucks outright, and truck drivers who must lease their trucks from the carriers who then contract for their services, both of whom are vulnerable to large carriers.

6

*Shimko*, 2014 WL 7366190 at *3 (internal quotation marks and citations omitted). In *Shimko*, the court held that a motor carrier in a similar lease provision could not escape liability by relying on the "does not own" language where both the driver and the company "owned" the equipment. The Court sees no reason to deviate from *Shimko*'s reasoning and holds that "dual ownership" of the kind contemplated here does not preclude liability under the TIL regulations.

      T&T cites an earlier *Shimko* order, which it claims "opined that a carrier's status as an owner likely rendered said regulations inapplicable." (DE 12 at 7–8.) *See Shimko v. Jeff Wagner Trucking, LLC*, No.11-CV-831-WMC, 2013 WL 10075919 (W.D. Wis. June 28, 2013). The *Shimko* order T&T cites decided a motion to dismiss on the grounds that Shimko did not adequately allege that he was a "owner" and "lessor" of the equipment, nor that the defendant was a "lessee" *Id.* at *4. Despite T&T's claim, the order made no ruling as to the applicability of TIL regulations where both parties are "owners" for the purposes of the statute. *Id*. The court gave Shimko leave to amend his complaint, in which he then adequately alleged that he was an "owner" of the equipment and that he "leased" the equipment to the defendants. The case proceeded to summary judgment where the court, in the order quoted above, held that "dual ownership" does not preclude the application of TIL regulations. *See Shimko v. Jeff Wagner Trucking, LLC*, No. 11-CV-831-WMC, 2014 WL 7366190 (W.D. Wis. Dec. 24, 2014). T&T ignores this superseding opinion in which the *Shimko* court holds the opposite of what T&T claims it held at the motion to dismiss stage. T&T thus errs by ignoring that the *Shimko* court later held that ownership of the equipment by both parties does not preclude application of TIL regulations.

T&T also claims that the Court must examine "the regulatory scheme as a whole and avoid a myopic focus on any particular provision." (DE 18 at 5 (internal citation omitted).) However, this is exactly what the *Shimko* court did. *Shimko* found that the TIL regulations expressly contemplate a "lease-back" in which the driver leases the equipment from the company, where the company retains title to the equipment, and the driver then leases the use of the truck and their driving services back to the company. *Shimko*, 2014 WL 7366190 at *3 (citing 49 C.F.R. § 376.12(ii)). Reading the regulatory scheme as a whole, *Shimko* held that the purpose of the regulations does not support distinguishing between "truck drivers who own their trucks outright, and truck drivers who must lease their trucks from the carriers who then contract for their services." *Id*. The Court agrees with *Shimko* that the statutory scheme, read as a whole, does not support an exception where, as Mr. Porter pleads in this case, both parties fit the statutory definition of an "owner."

As T&T does not contest that Mr. Porter sufficiently alleges that the truck was "leased" as that term is defined by the TIL regulations, and because the Court holds that "dual ownership" does not preclude application of TIL regulations, the Court denies T&T's motion to dismiss Count I.

*a. Applicability to Mr. Halleck*

Mr. Porter plausibly alleges that Mr. Halleck, as the "sole decisionmaker for T&T," aided and abetted the violations as forbidden by 49 C.F.R § 390.13[3] and is liable

---

[3] 49 C.F.R. § 390.13 provides that "[n]o person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

8

for the violations as well. (DE 1 at 17.) Mr. Halleck's sole argument that the TIL claim should not apply to him is that, because the TIL regulations do not apply to the Driving Opportunity, that he cannot aid, abet, encourage, or require a violation of regulations which do not apply. (DE 12 at 9.) Because the Court holds that Mr. Porter alleges sufficient facts to raise a plausible inference that the TIL regulations do apply to the Driving Opportunity, the Court denies the motion to dismiss Count I with regard to Mr. Halleck as well.

### 2. Count II—Indiana Business Opportunity Transactions Law

The Indiana Business Opportunities Act ("BOTA") requires that any sale or lease of any goods to an investor that are to be used by the investor in beginning or operating a business must comply with certain requirements, including making certain disclosures, substantiating claims of earning potential with data, and putting all contracts in writing. Ind. Code § 24-5-8-1 *et seq.* Mr. Porter alleges that the Driving Opportunity is a "business opportunity" under the Act and that T&T failed to comply with several of the requirements, including failure to make certain disclosures, the bond requirements of the act, failure to meet certain registration requirements, failure to support representations of earning potential, and failure to reduce contracts to writing. (DE 1 at 18–19.)

The sole dispute between the parties in this regard is whether the Driving Opportunity falls under an exception to BOTA that would cause BOTA to not apply. BOTA only applies to a "business opportunity" as defined by the Act. Indiana Code § 24-5-8-1 provides that a "'[b]usiness opportunity' does not include an investment that involves: . . . (2) the sale of any assets (other than inventory) of an ongoing business by the owner of the business." T&T claims

9

that the Driving Opportunity involved the sale of a tractor-trailer, which it qualifies as an "asset of an ongoing business," and that, as such, the Driving Opportunity falls under the exception in § 24-5-8-1. (DE 12 at 10.) Mr. Porter argues first that no "sale" occurred, because title to the tractor-trailer did not pass hands. Second, Mr. Porter argues that the tractor-trailer is properly categorized as "inventory," and even a "sale" of a tractor-trailer would not fall under the exception because the exception only applies to "assets (other than inventory)." (DE 17 at 9.)

The Court need not address whether or not Mr. Porter plausibly alleges that no "sale" occurred because it finds that, even if a sale did occur, the Complaint raises a plausible inference that the tractor-trailers were "inventory." There is no dispute as to whether the tractor-trailer is an "asset." The only dispute between the parties is whether the tractor-trailer is "inventory." While BOTA does not define "inventory," the Uniform Commercial Code defines "inventory" as goods which "(a) are leased by a person as a lessor; or (b) are held by a person for sale or lease or to be furnished under a contract of service." U.C.C. § 9-102(48). The complaint facially alleges that T&T was engaged in the business of leasing tractor-trailers to drivers (DE 1 at 4–5) and drivers rarely, if ever lasted long enough to own the trucks outright (DE 1 at 5). These allegations raise a plausible inference that the tractor-trailers were "held by [T&T] for sale or lease or to be furnished under a contract of service." U.C.C. § 9-102(48). At this stage of the proceeding, taking the facts alleged in the light most favorable to Mr. Porter, the complaint plausibly alleges that the tractor-trailers are "inventory, so even if the sale did occur, the transaction is not outside the bounds of BOTA."

Because the complaint, taking the facts alleged in the light most favorable to Mr. Porter, does not affirmatively establish that the Driving Opportunity was a "sale of assets (other than

10

inventory)," and because Mr. Halleck asserts no independent ground for the dismissal of Count II against him, the Court denies the motion to dismiss Count II as to both Defendants.

### 3. Count VI—Breach of Contract and Covenant of Good Faith

Last, Mr. Porter alleges a claim for breach of contract and for the breach of good faith obligations by T&T. Mr. Porter claims that T&T breached both its contractual and good faith obligations by failing to pay Mr. Porter 90% of the actual gross revenue it received, taking excessive deductions/charges, and failing to commit the contract and lease terms to writing. (DE 1 at 30–31.)

#### a. Breach of Contract

Mr. Porter asserts that T&T breached its contractual obligations. Paragraph 111(a)–(j) of the complaint lists ten of T&T's actions and omissions that Mr. Porter alleges constitute a breach of contract. (DE 1 at 30–31.) Paragraph 111(a) claims that T&T failed to pay Mr. Porter and the other drivers the promised 90% of the actual gross revenue it received for their services. Paragraph 111(b)–(j) lists other actions and omissions purported to constitute a breach of contract, including that T&T failed to provide certain written documents to Mr. Porter and the other drivers, that T&T charged the drivers unauthorized fees, and that T&T acted dishonestly by failing to follow state and federal law. (DE 1 at 30,–31.) T&T contends that items (b) through (j) of paragraph 111, nine of the ten actions and omissions alleged, are not contractual terms assented to by T&T and thus cannot be breached. The Court agrees with T&T.

Mr. Porter does not allege the formation of a contract in which T&T assented to nine of the ten terms that Mr. Porter claims T&T violated in paragraph 111(b)–(j) of the complaint. (DE

12 at 14-16; DE 1 at 30-31.) Mr. Porter concedes this point, stating that "[p]aragraphs 111(b)–(j) are intended to give Defendants notice of the items that serves as Porter's allegations regarding the alleged breach of the covenant of good faith and fair dealing." (DE 17 at 12–13.) The court finds that Mr. Porter does not plead facts which give rise to an inference that T&T ever agreed to do or not to do the things alleged in paragraphs 111 (b) – (j) of the complaint. (DE 1 at 30–31.) In other words, concerning a breach of contract, Mr. Porter's only actionable allegation is that T&T did not pay him the promised 90% of the actual gross revenue that it received as stated in paragraph 111(a). (DE 1 at 30; ¶ 111(a).)

### b. Breach of the Covenant of Good Faith

Mr. Porter also claims that T&T's ten actions and omissions listed in paragraph 111 violated T&T's good faith obligations to Mr. Porter and the other drivers. (DE 1 at ¶ 111.) These actions include charging Mr. Porter and the other drivers unauthorized fees, not paying promised compensation, and acting dishonestly. The parties dispute whether the covenant of good faith and fair dealing applies to the Driving Opportunity. In Indiana, implied covenants of good faith and fair dealing apply only to insurance contracts; employment contracts, where the contract is ambiguous as to the application of the covenants; or where the contract expressly impose a duty of good faith. *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App. 2011) (citing *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). T&T argues that the covenant of good faith and fair dealing does not apply to the lease and employment contract at hand. Mr. Porter advances three theories to argue that it does, namely that (1) all contracts covered by the Indiana Uniform Commercial Code are subject to the covenant of good faith; (2) this is an "ambiguous oral agreement" and thus subject to the duty of good faith; and (3) this

contract is an employment contract to which the covenant of good faith applies. (DE 17 at 11–12.)

### i. Mr. Porter does not state a claim of the duty of good faith under the ICC

The Indiana Commercial Code ("ICC") does not impose a general duty of good faith on all contracts it covers. As the Seventh Circuit explained, the ICC

> does not create a separate duty of fairness and reasonableness which can be independently breached. Instead, it applies generally [] to the performance or enforcement of every contract or duty, so that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract. . . . In short, the duty of good faith requires that a party perform its obligations and exercise its discretion under the contract in good faith. But it does not require a party to undertake a new, affirmative obligation that the party never agreed to undertake.

*Acheron Medical Supply, LLC v. Cook Medical Inc.*, 958 F.3d 637, 643–45 (7th Cir. 2020) (internal quotation marks and citations omitted). As the ICC does not impose a general duty of good faith, to state a claim, the plaintiff must allege bad faith in exercising discretion or in performing a specific obligation in the contract. Here, as stated, the only specific contractual provision that T&T may have violated is the promise to pay the drivers 90% of the gross revenue received. Mr. Porter alleges no specific way in which T&T breached its duty of good faith other than simply failing to honor the contract. He does not allege that T&T exercised its discretion in bad faith or that it undertook some underhanded action to avoid paying Mr. Porter the promised 90%. He simply alleges that T&T did not pay him the promised amount. Even if the ICC applied to this contract, there is no basis for a finding of a duty of good faith and fair dealing under the ICC here.

### ii. Mr. Porter does not adequately allege that the contract was ambiguous

Next, Mr. Porter argues that the duty of good faith applies because this is an "ambiguous oral agreement." Mr. Porter cites no case law that demonstrates that oral agreements are per se considered ambiguous. However, if a contract is "ambiguous . . . then the courts will impose such a duty of [good faith and fair dealing.]" *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015) (quoting *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Here, there being no written contract, and minimal specific details of the oral contract alleged, it is not alleged that any ambiguity exists. Mr. Porter does not specifically allege any ambiguous terms from the oral contract or allege that any term was ambiguous as to its application. Any perceived ambiguity arises because the complaint does not set out any specific contractual provisions, save some of the terms of the lease and representations made about pay to the drivers. Without alleging any specific ambiguities in the contract, Mr. Porter does not plead sufficient facts to give rise to an inference that the contract is ambiguous such that the parties owed each other a duty of good faith and fair dealing.

### iii. Mr. Porter adequately alleges an employment contract

Last, Mr. Porter alleges that he is owed a duty of good faith and fair dealing because his employment with T&T is a contractual employment to which the duty of good faith applies. In Indiana, the duty of good faith and fair dealing does not apply to at-will employment but applies only to contractual employment contracts. *Gregorich v. Tyson Foods, Inc.*, No. 3:19-CV-545, 2020 WL 470610 at *2 (N.D. Ind. Jan. 29, 2020). Indiana applies a strong presumption that employment is at-will and can be terminated at any time by the employer. *Id.* Courts are "disinclined to adopt broad and ill-defined exceptions to the employment at-will doctrine," *Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717, and the Indiana Supreme Court only

14

recognizes three exceptions to the presumption of at-will employment. *Baker v. Tremco, Inc*, 917 N.E.2d 650, 653 (Ind. 2009). Mr. Porter only claims that the first of those exception applies here, and no argument is made with regard to the other two. Mr. Porter asserts that his employment was contractual because the payment on the truck and trailer lease served as "additional consideration" for his employment with T&T and that the parties contemplated that their relationship would continue for a period of 192 weeks while Mr. Porter paid off the lease on the tractor-trailer. (DE 17 at 12.)

To convert at-will employment to employment which may be terminated only for good cause, an employee must give adequate and independent consideration for an employment contract. *Gregorich*, 2020 WL 470610 at *2. If an employee establishes that "adequate independent consideration" supports an employment contract, an Indiana court will conclude that the parties intended to establish a relationship in which "the employer may terminate the employee only for good cause." *Baker v. Tremco, Inc*, 917 N.E.2d 650, 653–54 (Ind. 2009). Indiana Courts have found adequate independent consideration to be provided when, among other scenarios, the employer is aware that the employee previously held "a position with assured permanency and the employee accepted the new position only after receiving assurances guaranteeing similar permanency" or where "the employee entered into a settlement agreement releasing the employer from liability on an employment related claim against the employer." *Id.* at 654.

At this stage of the proceeding, taking the facts alleged in the light most favorable to Mr. Porter, the Court concludes that Mr. Porter pleads sufficient facts to raise an inference that his employment was not at-will. Mr. Porter claims that the lease payments made to T&T constituted adequate independent consideration for his employment and that the parties contemplated that

15

the employment relationship would last at least four years, which was the term of the lease for the truck and trailer. (DE 17 at 12; DE 1 at 21–22.) The Court agrees.

T&T argues that the lease payments do not constitute independent consideration because they are a part of a separate contract. T&T argues that the Driving Opportunity consisted of two separate contracts: one for the drivers to purchase the trucking equipment, supplies, and services on an installment plan; and a second for the drivers to engage with T&T in order to transport freight on T&T's behalf. (DE 18 at 12–13.) However, the complaint does not facially demonstrate the existence of two contracts. Indeed, the complaint states that the drivers leased trucks from T&T while "simultaneously" agreeing to provide driving services utilizing such trucks. (DE 1 at 1.) While leasing the trucks from T&T, the drivers are controlled by T&T as to the appearance of the trucks, the routes available to the drivers, the freight transported by the drivers, and the customers to whom the freight is delivered. (DE 1 at 6, 20–21.) Mr. Porter alleges that the "[d]rivers were required to be available for service upon demand of T&T Farms." (DE 1 at 6.) Further, the complaint states that drivers worked "regular schedules for T&T Farms, often 6–7 days per week, and 11–14 hours per day" and that it was thus "impracticable for drivers to simultaneously take on any other employment outside of T&T Farms." (DE 1 at 20.) From the face of the complaint, it appears that the lease of the truck from T&T and any employment agreement were intertwined. Even if the Driving Opportunity consisted of two oral contracts, the complaint facially alleges that the two contracts were intertwined in a single, on-going transaction.

As the complaint facially alleges the existence of a single transaction where Mr. Porter agreed simultaneously to lease the truck from and to be employed by T&T, the allegations are sufficient to give rise to the inference that Mr. Porter agreed to pay T&T the amount of the lease

of the truck for the opportunity to drive routes and haul cargo at the discretion of T&T. In order to secure this employment with T&T, Mr. Porter alleges that he needed to "purchase" the Driving Opportunity by making lease payments. (DE 1 at 6.) The Court concludes that it is plausible from the face of the complaint that the lease payments constituted adequate independent consideration for Mr. Porter's employment with T&T and that the parties contemplated that that employment would continue until the end of the lease payments.

T&T also argues that because Mr. Porter alleges that T&T threatened to fire Mr. Porter and other drivers for certain infractions of T&T's policies, that the employment was "at-will." (DE 12 at 11.) However, Mr. Porter alleges that such threats were made by T&T for violations such as speeding, unsecured loads, or window tinting. The Court finds that these threats are not sufficient to demonstrate that T&T could terminate Mr. Porter "for any reason or no reason at all." *Hambien v. Danners, Inc.*, 478 N.E.2d 926, 928 (Ind. Ct. App. 1985). Whether or not Mr. Porter was terminable for any reason at all and, if Mr. Porter was only terminable for cause, if these infractions would be sufficient to constitute "good cause" to fire Mr. Porter are determinations not properly made at this stage of the proceeding. The Court merely finds that it is plausible from the face of the complaint that the lease payments constituted adequate independent consideration for Mr. Porter's employment with T&T and that the parties contemplated that the employment would continue for the term of the lease. Because it's plausible that a non-at-will employment contract existed in this case, Mr. Porter pleads sufficient facts to give rise to the inference that T&T owed him a duty of good faith and fair dealing. The Court denies the motion to dismiss Count VI regarding to T&T.

### c. Applicability to Mr. Halleck

Mr. Porter concedes that the breach of contract claim should be dismissed as to Mr. Halleck. (DE 17 at 13 ("Porter concurs that the breach of contract claim against Mr. Halleck should be dismissed.")) As such, the Court grants the motion to dismiss Count VI regarding to Mr. Halleck.

**D.     Conclusion**

For the reasons set forth above the Court—

- DENIES Defendant T&T Farms, Inc., and Mr. Halleck's motion to dismiss (DE 11) with regard to Counts I and II:
- DENIES IN-PART and GRANTS IN-PART Defendant T&T Farms, Inc.'s, motion to dismiss (DE 11) with regard to Count VI.; and
- GRANTS Defendant Mr. Halleck's motion to dismiss (DE 11) with regard to Count VI.

SO ORDERED.

ENTERED: May 27, 2022

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court