UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL PORTER,

    Plaintiff,

    v.                                  CASE NO. 3:21-CV-529-DRL-SJF

T & T FARMS, INC., et al.,

    Defendants.

**OPINION and ORDER**

Before the Court is Defendants' Motion for Leave to Supplement Expert Report of John Pinckney under Fed. R. Civ. P. 26(e). For the reasons stated below, Defendants' motion is granted.

**I.    Background**

Plaintiff Michael Porter filed this case on July 23, 2021, against Defendants T&T Farms, Inc. ("T&T Farms"), and T&T Farms' owner, Thomas Halleck, regarding T&T Farms' "lease-driver" business opportunity program. [DE 1 at 1, ¶1]. Plaintiff alleges that Defendants made factual misrepresentations and failed to disclose material facts about the program. Plaintiff's six-count complaint accordingly contends that Defendants violated: (I) the federal Truth-in-Leasing Regulations, 49 C.F.R. § 376.1 et seq.; (II) the Indiana Business Opportunity Transactions Act, Ind. Code § 24-5-8-1 et seq.; (III) the Indiana Wage Payment Statute, Ind. Code § 22-2-5-2 et seq.; (IV) the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, et seq.; and that Defendants (V) committed constructive fraud; and (VI) breached the applicable contracts and implied

covenant of good faith and fair dealing. [*Id.* at 2, ¶4; 12-31]. Through this complaint, Plaintiff also sought to certify a class of current and former drivers for T&T Farms. On September 15, 2021, Defendants answered and moved to dismiss Counts I, II, and VI of Plaintiff's complaint.

The Court then held a Preliminary Pretrial Conference on November 2, 2021. There, the parties consented to a two-phase discovery plan while Defendants' motion to dismiss was pending. The parties agreed that, during phase one, merit and class-based discovery would proceed on Counts III, IV, and V. Phase two would then focus on merit and class-based discovery related to Counts I, II, or VI—when, or if, those counts survived the pending motion to dismiss.

The Court ruled on Defendants' Motion to Dismiss on May 27, 2022, denying the motion as to Counts I and II and granting it in part as to Count VI. [*See* DE 28]. This ruling opened both phases of discovery, so the Court amended the Rule 16(b) Scheduling Order on August 30, 2022, to allow the parties sufficient time to conduct discovery on all counts. [*See* DE 33]. At the parties' request, the Scheduling Order was amended again on March 2, 2023 [DE 35], June 6, 2023 [DE 39], and on January 12, 2024 [DE 46]. Relevant to the instant motion, the Court's order entered on June 6, 2023, extended the parties' deadlines for disclosure of retained experts under Rule 26(a)(2) as follows: August 30, 2023, for Plaintiff and September 29, 2023, for Defendants. [DE 39].

Consistent with the deadlines set by the Court,[1] Defendants went on to disclose the expert report of Mr. John Pinckney, Vice President of National Transportation Consultants, Inc. [DE 58-1]. In this 3-page report, Mr. Pinckney expressed four numbered opinions [*See id.* (headings listing opinions #1-#4)]. Defendants explain that Mr. Pinckney rendered these opinions based on a review of certain documents, his experience in the commercial trucking industry, and his understanding of industry practices. [DE 58 at 2, ¶3]. Several months later, on March 4, 2024, the parties filed a Joint Status Report in response to this Court's order entered on January 16, 2024. There, Plaintiff stated that he intended to file a *Daubert* motion to exclude Mr. Pinckney's expert report, contending

> it expresses opinions that purport to interpret the contractual documents in this case, and are therefore improper legal opinions and conclusions of law; are not based upon applicable knowledge, skill, experience, training, or education relevant to the issues of this case; are not the product of reliable principles and methods relevant to the issues of this case; and will not help the trier of fact to understand the evidence or to determine a fact in issue.

[DE 47 at 4, ¶9a.]. This prompted Defendants to file the instant motion seeking leave to supplement Mr. Pinckney's report, which Plaintiff opposes. The motion became ripe on July 2, 2024, when Defendants replied in support of supplementation.

## II.   Discussion

Under Fed. R. Civ. P. 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present under Federal Rule of Evidence 702,

---

[1] Defendants' motion indicates that they served their expert report on October 3, 2023—a few days after the deadline set by the Court. [*See* DE 58 at 1, ¶1]. Neither party has acknowledged the apparent untimeliness of the report, so the Court will not consider this now.

703, or 705." Likewise, under Fed. R. Civ. P. 26(a)(2)(D), "[a] party must make these disclosures at the times and in the sequence that the court orders." As stated, here, the Court's Rule 16(b) Scheduling Order, as amended, set August 30, 2023, and September 29, 2023, as the deadlines for the parties to respectively make these disclosures. [DE 39].

Parties are also required to supplement their expert disclosures under Fed. R. Civ. P. 26(e). *See* Fed. R. Civ. P. 26(a)(2)(e). Under Fed. R. Civ. P. 26(e), a party must supplement an expert disclosure "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Parties must also supplement as ordered by the court. *See* Fed. R. Civ. P. 26(e)(1)(B). The Court's Scheduling Order ordered that "[s]upplementation under Rule 26(e) [is] due every **six weeks** until trial." [DE 21 at 2 (emphasis in original)].

Defendants contend that their proposed Supplemental Report from Mr. Pinckney is mandated under Fed. R. Civ. P. 26(e). Defendants first maintain that they acquired new information unavailable when Mr. Pinckney issued his initial report, and accordingly must supplement under Fed. R. Civ. P. 26(e)(1)(B). Defendants next contend that because of Plaintiff's position in the parties' Joint Report, Defendants also learned that Mr. Pinckney's initial report is "arguably 'incomplete or incorrect.'" [DE 58 at 4]. In response, Plaintiff contends that Defendants' motion should be denied for several reasons. Plaintiff disputes that Defendants acquired new information that was previously unavailable or that Defendants learned that the report was incomplete or

4

incorrect in some material respect that would trigger the duty to supplement under Rule 26(e). Plaintiffs maintain that the proposed supplemental report is an improper replacement report because it includes four substantively updated headings explaining Mr. Pinckney's opinions and accordingly, contains four entirely new opinions that are based on industry custom and practice. Plaintiff also maintains that the proposed supplement also improperly contains new discussions and analysis for each opinion, and a new section regarding Mr. Pinckney's qualifications. [DE 59 at 3]. Finally, Plaintiffs also contend that the proposed supplement still fails to address their anticipated objections on the admissibility of Mr. Pinckney's report under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

As stated, "Rule 26(e) sets out two occasions when a party is under a duty to supplement an expert report: (1) to include information thereafter acquired if ordered by the court, [or] (2) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Talbert v. City of Chicago*, 236 F.R.D. 415, 421 (N.D. Ill. 2006)(explaining that the two occasions listed in the rule are "separated by the disjunctive 'or'"). The parties' arguments primarily center on the second inquiry.[2]

---

[2] Defendants' motion does at first argue that the duty to supplement was trigged under the first inquiry, stating that the proposed supplemental report now "incorporates the information contained in Porter's and Halleck's recently completed depositions . . .." [DE 58 at 3, ¶6]. In response, Plaintiff maintains that the proposed supplement does not incorporate information from the depositions beyond simply listing them as part of the documents reviewed by Mr. Pinckney when preparing the report. [DE 59 at 3-4]. Defendants do not address this in their reply, instead focusing on arguments related to the second inquiry. Accordingly, the Court will not probe whether this triggered Defendants' duty to supplement. *See, e.g.*, *Kyles v. Beaugard*, No. 15-CV-8895, 2023 WL 5277882, at *21 (N.D. Ill. Aug. 16, 2023) ("A reply

5

Defendants maintain that they had a duty to supplement Mr. Pinckney's expert report upon learning that the report was incomplete or incorrect vis-à-vis Plaintiff's statements in the parties' joint status report. As Defendants contend, courts have recognized that "there are circumstances in which a party should be allowed to supplement in response to criticisms or deficiencies raised by opposing parties, such as a *Daubert* challenge." *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *8 (N.D. Ill. Apr. 5, 2005) (collecting cases). Indeed, "an expert need not stand mute in response to an opposing party's Daubert motion." *Allgood v. Gen. Motors Corp.*, No. 102CV1077DFHTAB, 2006 WL 2669337, at *5 (S.D. Ind. Sept. 18, 2006)(denying a motion to strike supplemental expert reports); *see also Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14C1859, 2016 WL 11942749, at *2 (N.D. Ill. Oct. 4, 2016).

In response, Plaintiff maintains that Defendants' proposed supplemental report "does nothing" to address Plaintiff's arguments raised in the parties' joint status report. [DE 59 at 8]. But as conceded by both parties, the instant motion "is not to determine the admissibility of Mr. Pinckney's opinions[.]" [*See* DE 59 at 4 ("While the present motion is not to determine the admissibility of Mr. Pinckney's opinions . . . ."); *see also* DE 60 at 15 fn. 15 ("[T]he issue before the Court is whether service of the Supplemental Report should be permitted, not if the opinions of the Initial Report are admissible.")]. The Court's Rule 16(b) Scheduling Order even provides that "deadlines related to motions

---

brief also can waive an argument by failing to respond to the opposing party's *counterarguments* or *new arguments* raised in the response brief.") (emphasis in original) (internal citations omitted).

in limine, *Daubert* motions, and motions to quash or strike either witnesses or evidence, will be established at a pretrial status conference conducted by the presiding judge." [DE 21 at 3-4]. No such deadline has been set here. Accordingly, the Court can only find that any arguments about the admissibility of Mr. Pinckney's initial report—or whether the proposed supplemental report cures alleged admissibility concerns—are premature.

Instead, what this Court must decide now is whether the proposed supplemental report is properly characterized as a supplement. "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *In re Ready-Mixed Concrete Antitrust Litigation*, 261 F.R.D. 154, 159 (S.D. Ind. 2009) (internal citation omitted). Thus, the supplementation rule does not give parties "license to disregard discovery deadlines and offer new opinions under the guise of the supplement label." *Welch v. Eli Lilly & Co.*, 2009 WL 700199, at *4 (S.D. Ind. Mar. 16, 2009). That said, "[t]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction likely depend on the facts of the case." *Gilbane Bldg. Co.*, 2005 WL 838679, at *8.

Although the line is unclear, courts have considered supplemental reports to be proper when the reports make corrections "using the **same methodology** found in the original report." *Whole Woman's Health All. v. Hill*, No. 118CV01904SEBMJD, 2020 WL 7129727, at *2 (S.D. Ind. Dec. 3, 2020) (emphasis in original). Courts have likewise found that a revised report is a proper supplement when the report remains "consist with the core opinions in the original expert report[.]" *Brown v. WellPet LLC*, No.

7

321CV00576HABSLC, 2023 WL 3483935, at *6 (N.D. Ind. Mar. 31, 2023), *report and recommendation adopted,* No. 321CV00576HABSLC, 2023 WL 3018313 (N.D. Ind. Apr. 20, 2023) (quoting *Braun Corp. v. Vantage Mobility Int'l, LLC,* No. 2:06-CV-50-JVB-PRC, 2010 WL 2039596, at *3 (N.D. Ind. May 20, 2010)). "The burden to show that the reports were supplements rather than new reports . . . is on the party who . . . is seeking to supplement the report." *Stuhlmacher v. Home Depot USA, Inc.,* No. 2:10–CV–467, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012).

Defendants maintain that both reports "address the same topics, use the same methodology and expertise (*i.e.,* Pinckney's comparison of documents to his experience with the customs and practices of the commercial trucking industry), and offer the same kind of analyses (whether the ICA ["Independent Contractor Agreement"] and other documents provided to Porter by T&T [Farms] comport with such customs and practices." [DE 5 at 12]. Defendants thus maintain that the core opinions within each report are consistent.

In response, Plaintiff first contends that the proposed supplement is a wholesale replacement with new opinions. In support, Plaintiff compares the length and word count of the two reports. [DE 59 at 1-2]. But neither the length nor the word count is the salient inquiry here. *See, e.g., Allgood,* 2006 WL 2669337, at *5 ("The supplemental declarations of plaintiffs' experts were lengthy but either responded to [defendant's] specific *Daubert* criticisms or harmlessly repeat information provided in the earlier reports.") Nor does Plaintiff cite any authority to support this contention. *See United States v. Beavers,* 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped

8

arguments without . . . citation to pertinent legal authority are waived.") Likewise, as Defendants contend in their motion, "by its nature, a supplemental expert report necessarily contains information that was not expressed in the original report, or there would be no need to supplement." *Gilbane Bldg. Co.*, 2005 WL 838679, at *8. Without more, the Court cannot deny the motion on this basis.

Next, Plaintiff disputes that the proposed supplemental report contains opinions consistent with those rendered in the initial report. Plaintiff maintains that the proposed supplemental report instead "contains entirely *new* opinions, based on the new concept of industry 'custom and practice.'" [DE 59 at 8 (emphasis in filing)]. In support, Plaintiff again references the number of times Mr. Pinckney uses the phrase "industry custom and practice" in the later report—twenty-seven (27)—to contend that Mr. Pinckney is attempting to present new opinions under this label. On reply, Defendants contends that Mr. Pinckney's original report was also based solely on his knowledge of trucking industry custom and practice, as the conclusion of the original explicitly stated that "[a]ll the opinions expressed in this report are to a reasonable degree of uncertainty within the relevant industry, which is the interstate transport of freight by commercial motor vehicles . . . ." [DE 58-1 at 2]. Defendants thus maintains that the supplemental report simply reinforces the basis of Mr. Pinckney's opinions throughout.

Plaintiff also compares the headings used by Mr. Pinckney in each report to illustrate that his proposed supplement renders new opinions. The Court reproduces Plaintiff's chart below:

9

| Pinckney Original Opinion | Pinckney Replacement Opinion |
|---|---|
| "T&T Farms, Inc. Had A Lease Called 'Independent Contractor Agreement' – Opinion #1" [Page 1] | "T&T Farms, Inc. Used a Lease, Called 'Independent Contactor Agreement,' Which Is Consistent with Other Agreements Used in the Trucking Industry Between Motor Carriers and Owner-Operators – Opinion #1" [Page 3] |
| "Exclusive Possession, Control, and Use of the Equipment Documented on the Agreement Is A Common Industry Practice – Opinion #2" [Page 2] | "The ICA's Provision Regarding T&T's Exclusive Possession, Control, and Use of Porter's CMV Is Consistent with Industry Custom and Practice as Seen in Lease Agreements between Motor Carriers and Owner-Operators – Opinion #2" [Page 7] |

| Pinckney Original Opinion | Pinckney Replacement Opinion |
|---|---|
| "T&T Clearly Specified Which Party Would be Responsible for Tolls and Expenses – Opinion #3" [Page 2] | "The ICA's Apportionment of Expenses to Porter Is Consistent with Similar Lease Agreements between Motor Carriers and Owner-Operators – Opinion #3" [Page 7] |
| "T&T Provided Documentation to Mr. Porter of the Cost of Violations and the Weekly Scheduled Payment on the Equipment – Opinion #4" [Page 2] | "The Documents Which T&T Provided to Porter Regarding the Cost of Traffic and FMCSR Violations, as Well as Those Which Showed the Status of the Loan Payment on Porter's Equipment, Are Consistent with Industry Custom and Practice – Opinion #4" [Page 8] |

[DE 59 at 2-3]. The Court cannot agree that this shows that the supplemental report consists of new opinions or opinions inconsistent with those rendered before.

Starting with Opinion #1, it is true that the heading summarizing Opinion #1 in Mr. Pinckney's initial report did not specifically state that the lease was consistent with other agreements in the trucking industry. Still, review of the subsection below Opinion #1 in the initial report shows that Mr. Pinckney described the contents of the lease,

10

citing regulations applicable to the trucking industry throughout the section. Likewise, the headings summarizing Mr. Pinckney's Opinions #2 in both opinions consistently state that the provision regarding "Exclusive Possession, Control, and Use of Equipment" is common for the industry. [*See* DE 58-1 at 2 and DE 58-4 at 7]. Mr. Pinckney also referenced his "experiences with common industry practices" in the content of his initial Opinion #2. [*See* DE 58-1 at 2].

Next, like Opinion #1, it is true that the heading summarizing Mr. Pinckney's Opinion #3 did not explicitly state that the lease's provision for payment or apportionment of expenses was consistent in the industry but does so in the proposed supplement. Still, like Opinion #1, Mr. Pinckney likewise referred to applicable regulations in the subsection below the headings. Finally, it is true that the headings and subsections for Opinion #4 in the initial report only discuss the documentation that was given to Plaintiff without stating that doing so is consistent with industry practice. Still, the concluding paragraph immediately below this opinion shows that Mr. Pinckney was discussing the documentation given to Plaintiff based on his training and experience and "within the relevant industry." [DE 58-1 at 2].

Based on this, the Court agrees with Defendants that the proposed supplemental report uses the same methodology and retains the same core opinions—though it is undisputably more articulately stated in the latter. *Brown*, 2023 WL 3483935, at *6; *Whole Woman's Health All.*, 2020 WL 7129727, at *2. Moreover, Plaintiff even appears to concede that Mr. Pinckney's opinions in the supplemental report remain consistent with those rendered in the initial report, stating "[i]n fact, the new report expresses even

11

more clearly just what Mr. Pinckney is doing . . . attempting to couch his opinions . . . to appear less like a simple legal opinion . . . [.]" As stated, whether Mr. Pinckney's supplemental report adequately addresses Plaintiff's *Daubert* arguments, and whether Mr. Pinckney's opinions are ultimately relevant or admissible is more appropriately addressed at another time, as determined by the presiding judge.

### III.   Conclusion

For these reasons, Defendants' Motion for Leave to Supplement Expert Report of John Pinckney is **GRANTED**. [DE 58].

**SO ORDERED** this 7th day of March 2025.

    s/Scott J. Frankel
    Scott J. Frankel
    United States Magistrate Judge